ROLLING RIDGE, INC., a Corporation, Appellant,

v.

Welby GOODALL et al., Appellees.

Court of Appeals of Kentucky.

May 8, 1959.

Richard C. Oldham and Erwin A. Sherman, Louisville, for appellant.

H. Bemis Lawrence, Louisville, for appellees.

CULLEN, Commissioner.

The issues on this appeal arise out of a contract for the sale of a tract of land laid out as a residential subdivision, the seller being the appellant, Rolling Ridge, Inc., and the buyers being the appellees, Elvy and Welby Goodall and their wives. The seller accepted some other land in trade for part of the purchase price, and the balance of the purchase price was to be paid as individual lots were sold. The buyers planned to build houses and sell the lots as so improved. At the time of the sale no water or gas mains had been laid, and the streets had not been constructed. However, the seller obligated itself in the sale contract to lay the mains and build the streets, the obligation being in this language:

"* * * the Seller, at its own expense, agrees to install and construct the utilities of water lines and gas lines, as well as streets, all of which are to meet the requirements of the Louisville and Jefferson County Planning and Zoning Commission. * *"

The seller (Rolling Ridge) contracted with the Louisville Water Company to install the water mains, and paid the company $16,365 to cover the cost. However, it was provided in the contract with the water company that it would charge a "tapping fee" of $150 for the connection of any lot to the main, and refund these fees to Rolling Ridge. The Goodalls protested the payment of the fees, and this action was brought by Rolling Ridge to determine the question of whether the tapping fees could be charged. The Louisville Water Company and the Goodalls were made parties. The circuit court held that the tapping fees could not be charged, because the ultimate result of charging these fees and refunding them to Rolling Ridge would be to impose the cost of installing the water mains on the Goodalls, whereas Rolling Ridge had contracted to install the mains at its own expense. The Louisville Water Company has not appealed. The only appeal is by Rolling Ridge.

It appears that the so-called "tapping fee" is a device that has been employed by the Louisville Water Company to recover from consumers the capital expense of extending water mains. In cases where, as here, a real estate developer has paid the cost of the mains, the company does not charge the fee unless the developer requests that it be charged and refunded to him, as a means by which he can recoup his expenditure. So the charging of the fee here would be solely for the benefit of Rolling Ridge, and would enable rolling Ridge to recover substantially all of its expenditure for the water mains, from the purchasers of the lots.

It further appears that the Louisville Extension Water District, which could have furnished water service to this subdivision, and the Louisville Gas and Electric Company, which furnishes gas service, both have a policy, where a developer has paid the cost of installing mains, of refunding to the developer a small sum each month out of the sums collected under their regular service rates. Under this practice, the consumer does not pay anything in addition to the normal monthly rates—the company reimburses the developer out of its regular rate charges by small monthly payments over an extended period of time.

The contract between Rolling Ridge and the Goodalls provided that the deed would be delivered within two weeks from the date of the contract, and that Rolling Ridge must complete the installation of the water and gas mains and the construction of the streets within 60 days after delivery of the deed. The contract was dated April 11, 1956, and Rolling Ridge's contract with the Louisville Water Company was executed June 12, 1956, after delivery of the deed to the Goodalls, so at the time the latter contract was made Rolling Ridge had no title to the land in which the water mains were laid.

■ The Louisville Water Company did not assert any right to charge the "tapping fees" other than through its contract with Rolling Ridge. The contract could give rise to such a right only if Rolling Ridge had some ownership rights with respect to the water mains that it could have conveyed to the water company. However, the fact is that Rolling Ridge did not and could not have any rights of ownership of the water mains, or of the land in which the mains were laid, but had conveyed the land to the Goodalls under a contract obligating Rolling Ridge to bear the expense of installing the mains. We think the clear meaning of the contract, and its necessary legal effect, are that the water mains would become the property of the Goodalls, at least to the extent that no part of the cost of installing the mains could be assessed against the lots sold to the Goodalls.

■ Rolling Ridge maintains that if its contract with the Goodalls is to be construed as precluding the collection and refund of tapping fees, the contract should be reformed, on the ground that its actual agreement was only to *advance* the cost of the water mains; that the Goodalls induced this agreement by representations that Rolling Ridge would be able to recover the cost of the mains through refunds from the water company; and that it was clearly understood that Rolling Ridge was to be reimbursed for the cost of mains through the refund of tapping fees. However, the evidence warrants the conclusion reached by the circuit court that the parties, in discussing the matter of refunds during the negotiations leading up to the contract, contemplated the type of refund made by the Louisville Extension Water District and the Louisville Gas and Electric Company, which did not involve the imposition of an extra charge upon the consumer, and they did not contemplate a refund to be accomplished through imposing on the consumer a special charge which was solely for the purpose of recovering the capital investment in the water mains. It appears that the subdivision was in the service territory of the Louisville Extension Water District, and would have been served by that district if the district had so desired.

Rolling Ridge endeavors to make point of the fact that the Goodalls had offered $55,000 for the land in question as an undeveloped tract, the sale price for the developed land was $100,000, and the cost to Rolling Ridge of improving the roads and installing the water and gas mains was $55,000, so if the cost of the water mains cannot be recouped the net price received for the developed land will be less than was offered for the land without development. The argument is that this shows the parties clearly intended that the cost of the water mains would be refunded. The argument is without foundation, because the contract calls for the sale of 50 lots for $100,000, and an additional 27 lots at $2,000 each if zoning approval can be obtained for the subdivision of the additional 27 lots. So the potential sale price for the developed land is $154,000, almost $100,000 more than was offered for the tract as undeveloped.

It is our opinion that the circuit court correctly concluded that the parties did not intend the cost of the water mains to be recovered through the imposition of a special charge against the individual lots, and the court correctly adjudged that the "tapping fee" could not be charged.

**124**

A further question is raised with respect to the installation of fire hydrants. The circuit court held that the agreement of Rolling Ridge to install water mains "to meet the requirements of the Louisville and Jefferson County Planning and Zoning Commission" required it to install fire hydrants. The uncontradicted evidence is that the regulations of the planning and zoning commission require the installation of fire hydrants at specified intervals. Since, when fire hydrants are installed, they normally are installed incident to the laying of the water main, we think a reasonable construction of the contract is that Rolling Ridge must install the fire hydrants.

The judgment is affirmed.